# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:12-cv-00253-MR
## [Criminal Case No. 3:08-cr-00259-RJC-DCK-9]

| | | |
|---|---|---|
| **GABRIEL NEAL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | <u>**MEMORANDUM OF**</u> |
| | ) | <u>**DECISION AND ORDER**</u> |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1]; Respondent's Motion for Summary Judgment [Doc. 8]; and Petitioner's Motion for Expedited Hearing [Doc. 14]. For the reasons that follow, Respondent's motion will be granted and Petitioner's motions will be denied and dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2008, Petitioner and eight co-defendants were charged with multiple counts related to an alleged scheme to defraud individuals, merchants, and financial institutions through the theft of certain securities such as checks or money orders, or through stealing personal

identification documents in a scheme to create fraudulent financial documents. These stolen or forged documents were then employed in an effort to obtain goods from retail stores. In some cases, the defendants were alleged to have retained the purchases and in others the merchandise was returned for a cash refund. [Criminal Case No. 3:08-cr-00259, Doc. 3: Indictment]. The Indictment further alleged that in carrying out this scheme to defraud, Petitioner and others committed wire fraud by transmitting fraudulently obtained property by means of wire communications in interstate commerce, in violation of 18 U.S.C. § 1349. Additional counts included conspiracy to commit identity theft, in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(A)(ii), (b)(1)(B), (b)(1)(D) and 1028(f); bank fraud, in violation of 18 U.S.C. §§ 1344 and 2; and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2. [Id.].

Petitioner was appointed counsel and entered into a written plea agreement with the Government. In the agreement, Petitioner agreed to enter voluntary pleas of guilty to Count One (conspiracy to commit wire fraud) and Count Fifteen (aggravated identity theft) of the Bill of Indictment in exchange for the Government's agreement to dismiss the remaining counts. [Id., Doc. 104: Plea Agreement ¶¶ 1-2]. Pursuant to the plea agreement, Petitioner agreed that the Court "may consider any such

dismissed counts and all pertinent information as 'relevant conduct' under" the Sentencing Guidelines. [Id.].

The plea agreement provided that Petitioner understood that the statutory maximum sentence for conviction on Count One was no more than thirty years' imprisonment; and upon conviction on Count Fifteen Petitioner faced a mandatory term of two years to be served consecutively to the sentence imposed for Count One. [Id. ¶ 4].

In executing the plea agreement Petitioner acknowledged that he was aware that the Court had not determined his sentence of imprisonment, and "that any estimate from any source, including defense counsel, of the likely sentence is a prediction rather than a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum for each count." [Id. ¶ 6].

In the plea agreement, Petitioner agreed both to allow a magistrate judge to conduct his Rule 11 hearing, and that the factual basis for his plea could be deferred until his sentencing hearing. [Id. ¶¶ 14-15]. On April 9, 2009, Petitioner appeared with counsel before U.S. Magistrate Judge David Kessler to enter his guilty plea. [Id., Doc. 111: Acceptance and Entry of Guilty Plea]. Petitioner was placed under oath and acknowledged that he was entering pleas of guilty to Counts One and Fifteen of the Bill of

Indictment, and that if accepted his guilty pleas could not be withdrawn at a later time.

Petitioner represented to the Court that had reviewed the elements of Counts One and Fifteen with his counsel along with the terms of the plea agreement. Next, the Court recounted the elements of Counts One and Fifteen, including the minimum and maximum terms of imprisonment and other penalties upon conviction for each offense. Petitioner agreed that he understood the potential terms of imprisonment for conviction on each count and that he understood the elements that the government would be required to prove beyond a reasonable doubt should Petitioner elect to abandon his decision to plead guilty and choose instead to go to trial.

Petitioner stated that he and his attorney had discussed how the Sentencing Guidelines may apply to the determination of his sentence, and that the District Court would not be bound by the Guidelines, but the Court must nevertheless consult the Guidelines in formulating an appropriate sentence. Next, Petitioner expressed his understanding that the Court would impose a sentence within the statutory limits, but that the sentence could be greater or less than the sentence as suggested by the Guidelines. Petitioner then acknowledged that even if the Court imposed a sentence that was more severe than he expected, he would still be bound by his plea

of guilty and have no right to withdraw the plea.

Petitioner swore that he was knowingly and voluntarily waiving his right to plead not guilty and demand a trial where he could examine witnesses, call witnesses on his behalf, and he acknowledged that the Government would be required to prove each element of the charged counts beyond a reasonable doubt. After deciding to waive these rights, Petitioner admitted to the Court that he was, in fact, guilty of the conduct charged in Counts One and Fifteen, and that his decision to plead guilty was not the product of coercion, threats or promises, other than those promises as detailed in the written plea agreement.

The Court continued by confirming Petitioner's acceptance of the terms of his plea agreement and that he was expressly waiving his right to appeal his conviction or sentence except on the grounds of prosecutorial misconduct and/or ineffective assistance of counsel. Petitioner agreed that he had reviewed the terms of the plea agreement with his attorney; that he had discussed any possible defenses to the charges filed against him; and that he was entirely satisfied with the services of his attorney. Finally, Petitioner agreed that he understood all parts of the Rule 11 hearing and that he wanted the Court to accept his pleas of guilty. The Court then accepted Petitioner's pleas of guilty after finding that Petitioner understood

the charges, the potential penalties, the consequences of the entry of his pleas of guilty, and that the pleas were both knowingly and voluntarily entered.[1]

A presentence investigation report ("PSR") was prepared by the United States Probation Office, and Petitioner, through counsel, filed numerous objections to the PSR.[2] While Petitioner's objections were being considered by the probation officer, Petitioner's counsel, after being instructed by Petitioner, filed a motion to withdraw from further representation citing Petitioner's numerous objections to her performance in his case. Counsel contended that Petitioner expressed a lack of trust in her efforts and ability to represent his best interest, and that he may want another attorney appointed. [Id., Doc. 183: Motion to Withdraw].

On November 12, 2009, Judge Kessler held an inquiry into status of counsel hearing. Petitioner's attorney, Julia Mimms, explained that she had been appointed to represent Petitioner after his indictment and thus far been his sole attorney during the course of the federal criminal proceedings. Ms. Mimms stated that over the past several months

---

[1] In making these findings, the Court has examined the transcript of the Rule 11 hearing along with the Acceptance and Entry of Guilty Plea.

[2] The objections will be addressed herein to the extent discussion is necessary to resolve the issues raised by Petitioner.

Petitioner had lodged complaints about her performance and intimated that he might want new counsel. Among other things, Petitioner accused Ms. Mimms of withholding a police report from him during discovery and that she did not have his best interest in mind. [Id., Doc. 240: Inquiry into Status of Counsel at 2-5].

Petitioner addressed the Court and expressed concern that he may have pled guilty to the wrong charges in his Indictment. Petitioner complained that he had not been provided sufficient access to the discovery and that he might not have entered into a plea agreement or entered his guilty pleas had he been able to sufficiently examine the discovery. [Id. at 10-11]. Finally, Petitioner complained that he had been denied a reasonable chance for pretrial release and that Ms. Mimms had ignored his case.

The Court then addressed Petitioner and in a quick turnabout from his previous positions, Petitioner confirmed that he could continue to work and cooperate with counsel in preparation for his sentencing hearing and he asked that Ms. Mimms continue as his counsel. The Court cautioned Petitioner that as he had agreed to continue with present counsel, he must cooperate and his refusal could necessitate another motion to withdraw. Further, Petitioner was warned that if he refused to cooperate and then

sought new counsel that there was no indication that his sentencing would be delayed. Based on the clear assertions of the Petitioner, the motion to withdraw was denied.

On February 8, 2010, a second motion to withdraw was filed by counsel at Petitioner's direction. The motion recounted the troubled attorney-client relationship and stated that communication had deteriorated to the point that an effective working relationship was no longer likely. [Id., Doc. 225: Second Motion to Withdraw]. The Court convened a second hearing on status of counsel on February 10, 2010, and found, after hearing from counsel and Petitioner, that the attorney-client relationship appeared irretrievably broken. The Court therefore allowed the motion to withdraw in open court. Petitioner was cautioned, however, that as his sentencing hearing would likely occur within a few weeks, and that any continuance on the basis of newly appointed counsel would be within the discretion of the presiding district judge. The Court appointed new counsel on February 12, 2010.

On March 10, 2010, newly-appointed counsel filed a motion to continue the sentencing hearing which had been scheduled for April 6, 2010. The motion discussed the voluminous discovery that counsel was presently reviewing. Counsel explained that he planned to meet with an

agent from the Federal Bureau of Investigation in an effort to hone in on the discovery that was relevant to Petitioner's case.

The motion also noted that the Government had expressed that Petitioner had breached his plea agreement by, among other actions, failing to accept responsibility for his crimes. The motion further stated that Petitioner had expressed a desire to withdraw his plea agreement and counsel claimed that he would need more time to review discovery and determine what implications attempting to withdraw the plea might present. [Id., Doc. 231]. The Government opposed the motion to continue and the Court denied the continuance on March 11, 2010.

On April 6, 2010, Petitioner appeared with his new counsel for his sentencing hearing. An oral motion by counsel to continue was denied after the Court found that Petitioner's counsel, who was appointed on February 12, some two months before the hearing, had sufficient time to prepare. Further, the Court found that any information that Petitioner's counsel felt was necessary during the hearing could be provided by the Government and counsel could review the information during a short recess in the proceedings.

Following a hearing that continued over the course of two days, the Court sentenced Petitioner to 46-months' imprisonment on Count One and

a mandatory consecutive term of two years' imprisonment for his conviction on Count Fifteen. [Id., Doc. 250: Judgment in a Criminal Case]. Petitioner filed a notice of appeal.

The Government, citing Petitioner's explicit waiver of his right to appeal – except on grounds of ineffective assistance of counsel or prosecutorial misconduct – moved to dismiss the appeal and Petitioner's appellate counsel filed a motion opposing dismissal. United States v. Neal, No. 10-4496 (4th Cir. filed Apr. 29, 2010). On April 28, 2011, the Fourth Circuit entered an Order granting the Government's motion and dismissing the appeal. The Court found that the issues he raised were fully encompassed by his waiver of appellate rights and that Petitioner's decision to waive such appellate rights was knowing and voluntary. The present § 2255 motion followed.

## II.  STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).[3]

## III. DISCUSSION

### A. First Claim for Relief

In his first claim for relief, Petitioner contends that he received ineffective assistance of counsel because, as he blankly argues, Ms.

---

[3] The Court has considered the record in the matter and applicable authority and concludes that the disposition of the Government's motion for summary judgment can be resolved without an evidentiary hearing in that Petitioner has failed to present a forecast of evidence on any of his claims sufficient to survive summary judgment. <u>See Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

Mimms had an inappropriate relationship with the Government attorney who was assigned to his prosecution, Mr. Zolot. [Civil Case No. 3:12-cv-00253, Doc. 1-1 at 3].[4] As Petitioner maintains, this relationship with Mr. Zolot prevented Ms. Mimms from providing him with a vigorous and sound defense. Petitioner argues that this inappropriate relationship served as a "Trojan horse" which allowed the Government to gain an unfair advantage in plea negotiations and ultimately left him unprepared to fight his case because Ms. Mimms refused to adequately review the evidence against him, and pressured him to plead guilty.

On January 22, 2009, a hearing was held to examine a potential conflict of interest. At this hearing, Ms. Mimms admitted that she had had a relationship with Mr. Morris, a Government attorney involved in the prosecution of Petitioner. Ms. Mimms explained that her relationship with Mr. Morris had ended before her representation of Petitioner began and that she did not believe that the relationship would have any impact on her ability to zealously represent Petitioner's interest. Ms. Mimms advised that all of her communications with the Government had been conducted with

_____

[4] As the Court finds that this first claim regarding an improper relationship is patently frivolous, the Court will defer discussing the standard for effective assistance of counsel. To the extent that Petitioner contends Ms. Mimms' performance entitles him to any relief under Strickland, the Court finds that these contentions lack merit.

Mr. Zolot. Ms. Mimms further stated that she had advised Petitioner of the past relationship.

Petitioner addressed the court and stated that Ms. Mimms had provided excellent representation and that although he understood she had a prior relationship with the Government attorney, he did not believe that would impact his case in any way and he requested that she remain as his attorney. When asked by the Court if he would agree to waive any potential conflict of interest Petitioner replied that he would so waive. The Court found that Petitioner's decision to waive any conflict of interest was knowing and voluntary. [Id., Doc. 314: Status of Counsel Hearing].

In light of these circumstances, Petitioner's argument that Ms. Mimms was having a relationship with Mr. Zolot is wholly without any evidentiary foundation and without merit. Petitioner offers nothing except an unsupported allegation that Ms. Mimms had a "paramour" relationship with Mr. Zolot. In her affidavit, submitted along with the Government's motion for summary judgment, Ms. Mimms flatly denies that she ever had a "paramour relationship" with Mr. Zolot and Petitioner offers no evidence to rebut this testimony. [Doc. 7-1 at 3: Mimms Aff.]. Further, to the extent Petitioner has confused Mr. Morris with Mr. Zolot, the Court finds that he

has clearly waived any argument regarding conflict of interest. In response to the Motion for Summary Judgment the Petitioner has offered no forecast of evidence that supports this claim in any respect. Accordingly, the Respondent's Motion for Summary Judgment will be granted and this claim will be denied.

## B.    Second Claim for Relief

In his second claim, Petitioner argues that his guilty plea was not knowingly and voluntarily entered because the Magistrate Judge did not require the Government to present sufficient facts to support the plea during his Rule 11 hearing. [Doc.1-1 at 14]. Petitioner's claim is foreclosed by the express terms of his plea agreement and his sworn statements during his Rule 11 colloquy.

In his plea agreement, Petitioner provided first, that a duly qualified magistrate judge could conduct his Rule 11 hearing, and second, that the factual basis for his plea would be deferred until the sentencing hearing. [3:08-cr-00259, Doc. 104: Plea Agreement ¶¶ 14-15]. In addition, Petitioner admitted under oath that there were sufficient facts to support of a finding of his guilt on Counts One and Fifteen and each of the elements of Counts One and Fifteen were explained to Petitioner. Moreover, Petitioner

acknowledged that he understood the charges against him and that he was in fact guilty as charged.

During his Rule 11 hearing, Petitioner acknowledged, while under oath, that he understood the terms of his plea agreement and that he agreed with those terms. "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citing United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (internal citation omitted). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 colloquy." Lemaster, supra (citing United States v. Bowman, 348 F.3d 408, 417 (4th Cir. 2003)). This strong presumption that a defendant has been truthful in his sworn answers creates "a formidable barrier in any subsequent collateral proceedings." Lemaster, supra (alterations and internal quotations omitted). Based on the foregoing, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a

primary virtue of Rule 11 colloquies would be eliminated – "permit[ting] quick disposition of baseless collateral attacks." Id. at 221-22 (quoting Blackledege v. Allison, 431 U.S. 63, 80 n.19 (1997)).

It is clear from the court record that Petitioner's decision to defer a factual basis until sentencing; his express agreement to proceed with the Magistrate Judge during his Rule 11 colloquy; and his solemn admission of guilt foreclose his argument regarding the voluntary and knowing nature of his plea.  Petitioner has presented no forecast of evidence to support this claim.  Accordingly, the Respondent's Motion for Summary Judgment will be granted, and this claim will be denied.

### C.    Third Ground for Relief

Here, Petitioner contends that this Court erred in denying Petitioner's request to withdraw his guilty plea to Count Fifteen of the Bill of Indictment. [Doc. 1-1 at 11-15]. This is yet another attack on the knowing and voluntary nature of his plea of guilty to Count Fifteen.

During his sentencing hearing, the Court reviewed the contents of the plea agreement, the acceptance and entry of guilty plea form, and the contents of the Rule 11 colloquy. Petitioner again acknowledged that he had signed each of the documents, and that in each document he had

conceded he was not contesting the conduct charged in Count Fifteen, and, importantly that he was not contesting the charge because he did, in fact, commit the crime that he had been charged with. [3:08-cr-00259, Doc. 270: Sent. Tr. at 29-30]. The Court then confirmed that based on the answers given during the Rule 11 hearing, and on the acceptance of plea form, and during the sentencing hearing, that Petitioner had entered a knowing and voluntary plea of guilty to both Counts One and Fifteen. [Id. at 33].

The Court next turned to the factual basis as it pertained to the aggravated identify theft charged in Count Fifteen and found that the facts set forth in the portions of the PSR to which the Petitioner did not object were insufficient to establish a full factual basis. [Id.]. The Government then made a proffer regarding the evidence obtained during the investigation. Specifically, the Government proffered that the evidence would show that Petitioner appeared with his co-defendant, Lorretta Blakeney-Herron, at a Quality Inn in Charlotte presenting a check drawn from Fifth Third Bank and an identification card stolen from Dwana Frazier Tillman; the card was later recovered from the home of Blakeney-Herron; Blakeney-Herron admitted that she and Petitioner had participated in this scheme at the Quality Inn;

and that video surveillance from that evening showed both Petitioner and Blakeney-Herron on the Quality Inn premises. [Id. at 33-35].

Petitioner does not deny that he was at the Quality Inn on that evening; rather, he contests whether the identification card depicted an actual person. In Flores-Figuerao v. United States, 556 U.S. 646 (2009), which was decided on May 4, 2009, almost one year before Petitioner was sentenced, the Court held that in order to convict a defendant of aggravated identity theft, the Government has the burden of proving that the defendant knew that the identification that was unlawfully used did, in fact, belong to another person.

The evidence offered during the sentencing hearing clearly established that the identification card that was employed in the scheme of Petitioner and Blakeney-Herron to pass a check at the Quality Inn did indeed belong to an actual person. Moreover, the evidence showed that Petitioner knew that the identification did not belong to Blakeney-Herron, but rather belonged to another person, Dwana Frazier Tillman. Therefore, Petitioner's present contention regarding withdrawal of his guilty plea to Count Fifteen is without merit because there is sufficient evidence to support each element of the charge, in particular that the stolen

identification belonged to an actual person. Petitioner has presented no forecast of evidence to support this claim.  Accordingly, the Respondent's Motion for Summary Judgment will be granted, and this claim will be denied.

### D.    Fourth Ground for Relief

Petitioner argues that his appellate counsel provided constitutionally deficient performance in failing to raise a claim of ineffective assistance regarding his sentencing counsel on direct appeal. [3:12-cv-000253, Doc. No. 1-1 at 16].

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency.  <u>Id.</u>

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in <u>Strickland</u>.  In regard to the second prong, Petitioner must demonstrate that he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Under these circumstances, Petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297 (citing <u>Strickland</u>, 466 U.S. at 697, 104 S.Ct. 2052).  In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>See</u> <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998).  Rather, the Court "can only grant relief under . . .<u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u> (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)).

Petitioner argues that his appellate counsel erred in failing to raise

claims of ineffective of counsel regarding the actions, or omissions of his sentencing counsel. <u>See</u> <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1385 (2012) (noting the Sixth Amendment right to effective assistance of counsel extends to a defendant's appeal from conviction). Petitioner argues that sentencing counsel failed to argue against a misapplication of the adjusted offense level and that he failed to adequately challenge the enhancement for obstruction of justice.

As the Government observes, in order for Petitioner's arguments regarding appellate counsel to succeed he has the burden of demonstrating that he would have succeeded on direct appeal on the arguments regarding his sentencing counsel. [Doc. 7 at 17]. The Court notes that Fourth Circuit precedent demonstrates that claims of ineffective assistance of trial counsel are seldom reached on direct appeal. Rather, those claims should generally proceed through a collateral proceeding under § 2255. <u>See</u> <u>United States v. DeFusco</u>, 949 F.2d 114, 120 (4th Cir. 1991). As discussed, <u>supra</u>, Petitioner has failed to show in this proceeding any ineffective assistance by sentencing counsel. In a §2255 proceeding a prisoner has much greater latitude in pursuing claims of ineffective assistance than he does on direct appeal. Petitioner's inability to show

such ineffective assistance herein completely undermines his claim that his appellate counsel should have pursued the ineffective assistance claims on direct appeal. Thus, appellate counsel's decision not to pursue such claims is certainly not unreasonable and Petitioner can show no prejudice.

Petitioner's claim fails for the additional reason that he misrepresents the record. In the sentencing hearing, Petitioner recalls that he heard his attorney stipulate to an offense level of 23 rather than the level 21 which Petitioner contends is correct. [Doc. 1-1 at 22]. The PSR calculated that Petitioner should be held responsible for $216,864.20 in restitution based on his involvement in the conspiracy and found that a 12-level increase in offense level was appropriate under USSG § 2B1.1(b)(1)(G)). The Court received evidence on this issue and found that the amount of loss that was reasonably foreseeable to Petitioner was between $120,000 and $200,000, and therefore his offense level should only be increased by ten levels. The Court therefore sustained Petitioner's objection to paragraph 22 of the PSR. Petitioner's objection to paragraph 23 of the PSR was likewise sustained after the Court concluded that the number of victims was overrepresented and therefore the offense level should only be increased by four levels rather than the six-level increase as recommended by the

PSR. [3:08-cr-00259, Doc. 213: PSR ¶¶ 22-23; Doc. 272: Sent. Tr. at 122-124].  Petitioner also received a two level enhancement pursuant to USSG §2B1.1(b)(10) for possessing five or more means of identification that were unlawfully produced.  Petitioner has not challenged that enhancement in this proceeding.  This brought Petitioner's adjusted offense level to 23, which was correct.  Thus, any further objection by counsel to a level 23 would have been fruitless and a stipulation, if any, would have been harmless.  It is worth emphasizing, however, that Petitioner's sentencing counsel vigorously argued each of these points, even prevailing in part with regard to the enhancements in paragraphs 22 and 23.  There is no evidence of any ineffective assistance by sentencing counsel.  There is no evidence of any ineffective assistance on this point by appellate counsel. Accordingly, this argument is denied.

In his final claim, Petitioner contends that his attorney was not sufficiently prepared to defend against the Government's effort to seek an enhancement for obstruction of justice. Petitioner contends that his appellate counsel's failure to argue this issue on appeal entitles him to relief under Strickland.  [Doc. 1-1 at 16].

During sentencing, the Government presented evidence that

Petitioner committed obstruction of justice by placing calls from the Mecklenburg County Jail while he was in detained in this case. The record makes clear that Petitioner had contact with Sherri Glenn while detained and solicited her efforts to present a false written statement regarding his involvement in the case and that Petitioner did this in an effort to minimize his guilt. Ms. Glenn contacted her attorney regarding the request who in turn contacted the FBI. An agent then spoke with Ms. Glenn and she recounted Petitioner's attempt to get her to provide the false statement.

Petitioner's contention that he was ambushed by the Government or that his attorney was ill-prepared to defend against the obstruction enhancement is not supported by the record. It is clear that his attorney presented a tape of the conversation between Petitioner and Ms. Glenn and, as he explains, in an effort to provide the Court with the full context of the conversation. Thus, his counsel clearly anticipated that the Government would present evidence regarding obstruction because he secured the tape of the conversation in advance of the sentencing hearing. Petitioner was clearly on notice of the Government's intention and his attorney was obviously prepared to challenge the Government's effort. This argument will therefore be denied.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in his Section 2255 motion are without merit and the Court will, therefore, grant Respondent's motion for summary judgment.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right.   See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).   Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right.   Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). As a result, the Court declines to issue a certificate of appealability.   See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# O R D E R

**IT IS, THEREFORE, ORDERED** that:

1.  Respondent's Motion for Summary Judgment [Doc. 8] is **GRANTED**, and Petitioner's § 2255 Motion [Doc. 1] is **DENIED** and **DISMISSED**.

2.  Petitioner's Motion for an Expedited Hearing [Doc. 14] is **DISMISSED** as moot.

3.  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 16, 2014

Martin Reidinger
United States District Judge